NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 170639-U

NO. 4-17-0639

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 22, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| RAY T. OVERTON, | ) | No. 90CF652 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Peter C. Cavanagh, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court reversed the trial court's denial of defendant's motion for leave to file a successive postconviction petition.

¶ 2   In November 1991, a jury convicted defendant of first degree murder (Ill. Rev. Stat. 1989, ch. 38, ¶ 9-1(a)(1)). The State alleged that defendant and three others started a fist fight with Paul Babcock and defendant and another, Clarence Smith, later stabbed Babcock in the head with screwdrivers. In January 1992, the trial court sentenced defendant to 90 years in prison. Defendant appealed, arguing only that his sentence was excessive, and this court affirmed. *People v. Overton*, No. 4-92-0096 (Nov. 5, 1992) (unpublished order under Illinois Supreme Court Rule 23).

¶ 3   In July 1993, defendant filed a postconviction petition. The trial court dismissed the petition after second-stage proceedings, and this court later affirmed on appeal. *People v. Overton*, No. 4-96-0085 (June 3, 1997) (unpublished order under Illinois Supreme Court Rule

23).

¶ 4    In June 2017, defendant filed a motion for leave to file a successive postconviction petition. Relevant to this appeal, defendant alleged that (1) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) and (2) he received ineffective assistance of counsel from his prior attorneys who failed to argue that the trial court improperly excluded a confession from a codefendant that was admissible pursuant to *Chambers v. Mississippi*, 410 U.S. 284 (1973) (holding due process sometimes requires the admission of an out-of-court statement that the declarant, and not the defendant, committed the crime). The State filed a response to defendant's motion for leave to file, contending that defendant failed to establish cause and prejudice. In August 2017, the trial court conducted a hearing on defendant's motion and denied it.

¶ 5    Defendant appeals, arguing the trial court erred by denying defendant leave to file a successive postconviction petition. We agree and reverse and remand for further proceedings.

¶ 6                              I. BACKGROUND

¶ 7                             A. Procedural History

¶ 8    In September 1990, the State charged defendant with first degree murder (Ill. Rev. Stat. 1989, ch. 38, ¶ 9-1(a)(1)), alleging that he and three other people started a fist fight with the victim, Paul Babcock, and later stabbed him causing his death.

¶ 9    In November 1991, the State presented evidence at defendant's jury trial that police officers found Babcock lying in an alley. He was taken to a hospital and died about two weeks later. Dr. Alfonso Strano testified that he performed an autopsy on Babcock and concluded that Babcock died from stab wounds to his head. Strano initially believed the small, circular wounds were caused by an ice pick, but he agreed that the wounds were also consistent

with being stabbed with a Philips and flathead screwdriver.

¶ 10    Carrie Cook and Rita Davidson testified that they were friends with defendant and Clarence Smith. On September 9, 1990, the four of them drove together from Jacksonville, Illinois, to Springfield, where they met other friends. Everyone was sitting on the front porch drinking beer when Babcock rode by on a bicycle. Someone called Babcock over to the porch and began asking him questions. Shortly thereafter, defendant, Smith, and two other men began punching and beating Babcock. The men eventually beat Babcock unconscious before carrying him and his bike to an alley.

¶ 11    According to Cook and Davidson, a few minutes later they and Smith got into a car driven by defendant with the intention of leaving. Defendant drove to the alley, and he and Smith exited the vehicle. The men walked towards Babcock and then returned to the car, where they opened the trunk and took items from what sounded like a toolbox. Defendant and Smith then walked back down the alley towards Babcock. This time, when they returned, the men seemed hyper or energized. One of them, Cook believed it was Smith, said, "He was a hard one to kill," and the other said, "Yeah, he was." Cook testified that Smith was splattered with blood from head to toe while defendant merely had some blood on his shoes and the bottom of his pants.

¶ 12    On cross-examination, defendant asked Cook if she had a conversation with Smith on September 11, 1990. The State objected, and at a sidebar, defense counsel proffered that Cook would testify that Smith told her he alone stabbed Babcock and defendant had nothing to do with it. Counsel also explained that Smith would refuse to testify on fifth amendment grounds. Finally, counsel asserted that the statement was not being offered for the truth of the matter asserted but the jury should be able to consider the fact that the statement was made. The

trial court sustained the State's objection because it concluded the statement was not relevant if it was not offered for its truth.

¶ 13      The State played for the jury a recorded interview, dated September 13, 1990, between defendant and detectives Charles Pennell and Tim Young. Defendant claimed he drove to the alley because Smith asked him to do so and Smith said he wanted to take the bicycle. Defendant stated that Smith walked ahead of him in the alley and pulled out a Phillips screwdriver. Smith then stabbed Babcock several times in the head and stated he was going to kill Babcock. Defendant stated that on the way home, Smith threw the screwdriver into a cornfield. Defendant denied stabbing Babcock. Young testified on cross-examination that the tape recording had not been edited, shortened, or altered in any way.

¶ 14      The State also presented a written statement signed by defendant at a subsequent interview conducted on September 27, 1990. The detectives informed defendant that Smith claimed defendant stabbed Babcock. Defendant changed his story to say that he grabbed a flat-head screwdriver from the trunk of the car and stabbed Babcock with the handle. Defendant maintained Smith stabbed Babcock in the head. Defendant also stated that he threw his screwdriver into a cornfield just like Smith. Pennell testified that instead of having defendant read the statement, he read the statement to defendant before having him sign it. The interview was not otherwise recorded.

¶ 15      Defendant testified in his own defense and admitted to participating in the beating of Babcock and dragging him and his bike to the alley. Defendant stated that Smith asked defendant to go to the alley because he wanted to take the "rims" of the bicycle. Defendant said that when they first returned to the car, he took a socket and rachet from the trunk so he could remove the rims. Smith was six or seven feet ahead of defendant when defendant noticed Smith

stabbing Babcock. Defendant grabbed at Smith's arm, scratching it, and eventually got him to stop. Defendant testified that Pennell told defendant "they saw a picture of Mr. Smith's arm" that defendant had scratched. Defendant further testified that when Pennell read his signed statement, Pennell left out the parts that defendant stabbed Babcock in the back and that defendant threw a screwdriver into a cornfield.

¶ 16 On cross-examination, the State pressed defendant about whether he told police about the ratchet and trying to stop Smith. The following exchange occurred:

"Q. But when you were explaining on the tape, you never mentioned anything at all about ratchets, did you? *** Did you mention anything?

A. *** If you notice, that tape keeps stopping too, doesn't it?

Q. No, did you mention it?

A. Yes, I mentioned it.

Q. And I guess you told [the detective] too that you tried to stop [Smith] too when he was stabbing him?

A. Yes, I did, and as I understand they are supposed to have pictures of Mr. Smith's arm.

Q. But I guess they turned the tape off too when they said that?

A. About a scratch?

Q. Yes.

A. I guess so."

¶ 17 In closing argument, the State asserted, "[T]he crux of the whole case is the statement that this defendant gave to Detectives Pennell and Young on September 27, 1990." "You never like to accuse somebody of perjury but I submit to you that either Detective Pennell

- 5 -

and Detective Young are committing perjury or this defendant is committing perjury. It can't be both ways."

¶ 18    The jury found defendant guilty of first degree murder. In January 1992, the trial court sentenced defendant to 90 years in prison.

¶ 19    On direct appeal, defendant challenged only that his sentence was excessive. In November 1992, this court affirmed. *People v. Overton*, No. 4-92-0096 (Nov. 5, 1992) (unpublished order under Illinois Supreme Court Rule 23).

¶ 20                    B. The Postconviction Petition

¶ 21    In July 1993, defendant *pro se* filed a petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 1992)), alleging, among other things, that he was denied due process when Cook was not allowed to testify that Smith confessed to killing Babcock. The trial court advanced the petition to the second stage, and postconviction counsel filed an amended petition that incorporated all of defendant's *pro se* claims. The amended petition did not elaborate on defendant's claim regarding Cook; instead, it addressed ineffective assistance of counsel on various grounds. The trial court subsequently dismissed the petition on the State's motion.

¶ 22    This court affirmed the dismissal of defendant's postconviction petition on appeal. *People v. Overton*, No. 4-96-0085 (June 3, 1997) (unpublished order under Illinois Supreme Court Rule 23). This court concluded that defendant had forfeited the only claim advanced on appeal—namely, that counsel was ineffective because he was allegedly drunk during trial—by not raising it before the trial court. This court also concluded that absent forfeiture, defendant's ineffective assistance claim was meritless.

¶ 23    C. The Motion for Leave To File a Successive Postconviction Petition

¶ 24          In June 2017, defendant filed a motion for leave to file a successive postconviction petition. Relevant to this appeal, defendant alleged that he received ineffective assistance of counsel from his prior attorneys who failed to argue that the trial court improperly excluded Cook's testimony that Smith confessed to the murder because that testimony was admissible pursuant to *Chambers v. Mississippi*, 410 U.S. 284 (1973). In support of that claim, defendant attached the affidavit of David Dunn, who averred that later on the morning of the murder, defendant, Smith, and Cook came to Dunn's house in Jacksonville. Dunn noticed Smith had blood splattered on his shirt, pants, and shoes, while the others did not. Dunn asked Smith "what the hell was all over his clothing." While responding, Smith began to brag that he stabbed a guy in the head until defendant grabbed his arm to stop him. Smith showed Dunn a scratch on his forearm.

¶ 25          Dunn further averred that he later called the Springfield Police Department and spoke with Pennell. Dunn told Pennell about Smith's confession, and Pennell asked him to sign a statement. Dunn refused when he told Pennell the statement he was being asked to sign falsely said defendant also stabbed the victim and Pennell refused to amend the statement. Dunn concluded by saying he informed defense counsel about the information now contained in the affidavit but counsel never called him to testify.

¶ 26          In July 2017, the State filed a response to defendant's motion for leave to file a successive postconviction petition, arguing defendant's claims could have been raised earlier and he did not set forth a claim of actual innocence, which would excuse any forfeiture.

¶ 27          Later in July, defendant filed a motion to supplement his petition to include a claim that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963). Defendant alleged that the State had photographs of the scratch on Smith's arm but failed to disclose them. Defendant

explained that he received a response to a Freedom of Information Act (FOIA) request in June 2017 that contained a police report. That report, attached to the motion to supplement, was dated September 13, 1990, and stated, "Per request of Det. T. Young I took photos of a cut on the right arm of [redacted] ***. Photos were taken at 601 E. Jefferson St." The report was signed by William Sowers. Defendant asserted the photographs would have changed the outcome of the trial because they supported his defense.

¶ 28     In August 2017, the trial court conducted a hearing on defendant's motions. The State was present in person, and defendant appeared by phone. Defendant argued that he had established cause and prejudice for each of his claims. The State was permitted to respond to each of defendant's arguments as he raised them, frequently disagreeing with defendant's assertions and informing the trial court that defendant offered no support for them. Specifically, the State noted that defendant claimed that he never received any photographs but he did not offer any proof. The State contended that defendant's testimony at trial suggested the photos were disclosed in discovery. Defendant argued his trial counsel did ask for the photos and they were never produced. The State responded that, if defendant were correct, he should have raised the issue in his initial petition. The trial court agreed with the State and its reasoning when it denied leave to file, specifically noting that defendant should have brought the photographs up at trial and that the State did not conceal them.

¶ 29                    D. Other Proceedings

¶ 30     In May 2018, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)). The trial court granted the State's motion to dismiss, and in August 2020, this court affirmed on appeal. *People v. Overton*, 2020 IL App (4th) 180755-U, ¶ 30.

¶ 31                          II. ANALYSIS

¶ 32        Defendant appeals, arguing the trial court erred by denying defendant leave to file a successive postconviction petition. We agree and reverse.

¶ 33                  A. Delay in Resolution of This Appeal

¶ 34        Before addressing defendant's claims, we explain that this case presented an issue concerning the State's participation at the motion for leave to file stage, which the Illinois Supreme Court has stated trial courts are capable of making on their own and "there is 'no reason for the State to be involved.' " *People v. Lusby*, 2020 IL 124046, ¶ 29 (quoting *People v. Bailey*, 2017 IL 121450, ¶ 25, 102 N.E.3d 114). Prior to the supreme court's ruling in *Lusby*, the appellate court was split on the issue of whether the State's participation required reversal irrespective of the merits of a defendant's claims. *Id.* ¶ 29 n.1. The supreme court resolved that split by explaining that courts of review are permitted to reach the merits of a defendant's claims in the interest of judicial economy. *Id.* We reserved ruling on the instant case until the supreme court answered the question.

¶ 35                  B. Successive Postconviction Petitions

¶ 36        The Act provides a criminal defendant the means to redress substantial violations of his constitutional rights that occurred in his original trial or sentencing. *Bailey*, 2017 IL 121450, ¶ 17; 725 ILCS 5/122-1 (West 2016). The Act contemplates the filing of only one postconviction petition and expressly provides that " '[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.' " *Bailey*, 2017 IL 121450, ¶ 15 (quoting 725 ILCS 5/122-3 (West 2014)). However, a trial court may grant a defendant leave to file a successive postconviction petition if (1) the defendant demonstrates cause for his failure to bring the claim in the initial petition and (2) prejudice results from that

failure. *Id.* ¶ 14. The Illinois Supreme Court has described the cause and prejudice test as follows:

> "To show cause, a defendant must identify 'an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings.' [Citation.] To show prejudice, a defendant must demonstrate 'that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process.' [Citation.]" *People v. Evans*, 2013 IL 113471, ¶ 10, 989 N.E.2d 1096.

¶ 37    A defendant does not need to "establish cause and prejudice conclusively prior to being granted leave to file a successive petition ***." *People v. Smith*, 2014 IL 115946, ¶ 29, 21 N.E.3d 1172. But the cause-and-prejudice test presents a higher burden than the frivolous or patently without merit standard applied at first-stage proceedings. *Id.* ¶ 35. A defendant "must submit enough in the way of documentation to allow a circuit court to make" the cause-and-prejudice determination. (Internal quotation marks omitted.) *Id.* ¶ 30. A trial court should deny leave to file a successive postconviction petition "when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Id.* ¶ 35. "In other words, the court must determine whether defendant has made a *prima facie* showing of cause and prejudice." *Bailey*, 2017 IL 121450, ¶ 24.

¶ 38    At this stage, a trial "court is precluded from making factual and credibility determinations." *People v. Robinson*, 2020 IL 123849, ¶ 45. "[T]he well-pleaded allegations in the petition and supporting documents will be accepted as true unless it is affirmatively

demonstrated by the record that a trier of fact could never accept their veracity." *Id.* ¶ 60. A trial court's denial of leave to file a successive postconviction petition presents a question of law that appellate courts review *de novo*. *Bailey*, 2017 IL 121450, ¶ 13.

¶ 39                                    C. Defendant's *Brady* Claim

¶ 40            Defendant first argues that he made a *prima facie* showing of cause and prejudice for his *Brady* claim. Defendant contends that the police report he received in response to his FOIA request shows that the State withheld evidence that would have supported his defense. Specifically, the report mentions photographs depicting a scratch on a person's arm taken at the direction of Young. Defendant's trial testimony referred to photographs the detectives claimed to have seen, and the State argued in closing that defendant was lying and the detectives were telling the truth.

¶ 41            The State responds that defendant failed to establish (1) cause because he could have raised the claim earlier and (2) prejudice because (a) the police report does not state the subject of the photographs and (b) even assuming such photographs existed, the evidence was immaterial.

¶ 42                                    1. *The Law*

¶ 43            In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused *** violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The prosecution must disclose said favorable evidence whether or not there has been a request by the accused. *United States v. Agurs*, 427 U.S. 97, 107 (1976). "Evidence is material if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed." *People v. Beaman*, 229 Ill. 2d 56,

- 11 -

74, 890 N.E.2d 500, 510 (2008). "[A] showing of materiality does not require demonstration by a preponderance that disclosure would have resulted ultimately in defendant's acquittal." *People v. Coleman*, 183 Ill. 2d 366, 393, 701 N.E.2d 1063, 1077 (1998). Instead, materiality is demonstrated "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). The ultimate focus is "whether in [the evidence's] absence [defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 434.

¶ 44                                           2. *Cause*

¶ 45            In this case, defendant stated at the hearing on his motion that his trial counsel requested all photos during discovery, including any of Smith's arm, but the State did not produce any. In his motion to supplement, defendant repeatedly alleged the State failed to disclose the photographs. Defendant first received objective evidence of the photographs' existence in response to his FOIA request in June 2017, when the State provided a redacted police report from an officer stating he took pictures of a person's scratched arm at Young's request. Defendant then immediately moved to supplement his petition. He could not have raised this claim sooner because he had nothing to suggest that photographs actually existed. See *Strickler v. Greene*, 527 U.S. 263, 283-84 (1999) (holding that it was reasonable for postconviction counsel to rely on the presumption that the prosecutor would perform his duty to disclose all exculpatory material and that such materials would be in open files tendered to defendant for inspection). Although the State disputes some of this information, at this stage the court is to accept all well-pleaded allegations in the petition and supporting documents as true. *Robinson*, 2020 IL 123849, ¶ 60. Defendant's allegations make a *prima facie* showing of cause.

¶ 46                                         3. *Prejudice*

¶ 47 Here, the police report itself is favorable evidence because defense counsel could have used it to question Young about whether defendant was telling the truth about the photographs' existence. The State argues that any photographs are immaterial because defendant's claim is "outlandish;" however, that is exactly defendant's point. At trial, defendant asserted that the police omitted from his recorded interview statements defendant made that (1) he tried to stop Smith and (2) in doing so, defendant scratched Smith's arm. Experience tells us that claims that the police omitted relevant evidence are frequently met with skepticism by central Illinois juries. If defendant could have *corroborated* his otherwise self-serving claim with objective evidence, his credibility could have been significantly bolstered. Indeed, the State argued to the jury that the "crux" of the case was whether defendant or the detectives were committing perjury.

¶ 48 We note that at this stage, this court must accept all well-pleaded allegations as true, and defendant need only establish a *prima facie* case. With this in mind, defendant's argument proceeds as follows:

¶ 49 Defendant testified at trial that he did not stab Babcock and, in fact, he scratched Smith's arm to stop Smith's stabbing Babcock. When defendant told the police this information, they responded that they knew about the scratch because they had seen photographs of it. On cross-examination, the State challenged defendant, sarcastically asking, "I guess you told [the detective] that you tried to stop [Smith] too when he was stabbing him?" Defendant insisted that (1) he did tell the police and (2) the police supposedly had pictures of Smith's arm. The State again sarcastically suggested that the police turned the tape off when discussing the scratch with defendant, and defendant agreed. Defense counsel did not attempt to rehabilitate defendant and did not question Young or Pennell about defendant's version of events.

¶ 50        However, the police report suggests that defendant did tell the police about the scratch. First, the report is dated the same day as defendant's recorded interview. Second, the transcript of the interview in the record demonstrates that Pennell and Young spoke with defendant before and after the recorded conversation, including about material elements of the case such as defendant's identification of Smith via photo lineup. This fact suggests that the police could have discussed defendant's scratching Smith or the photographs showing the same or both during the same interview but not while it was recording.

¶ 51        If, as defendant claims, the unredacted police report confirmed that Smith's cut arm was photographed at Young's request, defense counsel could have confronted Young with that information. Young would have had to either explain (1) why he omitted defendant's statements from the recorded interview or (2) why he requested pictures of Smith's cut arm if defendant never told him about the scratch. Counsel could then have questioned why the photographs were never turned over during discovery, thereby bolstering defendant's claim that the police were at best not being forthright and at worst were intentionally withholding evidence.

¶ 52        To the extent the State claims the evidence is too vague to show that (1) the photographs exist, (2) are of Smith's arm, or (3) that the cut photographed was caused by defendant instead of some other explanation, its arguments are premature. The question at this stage is whether the claim merits further proceedings such that defendant should be allowed to file a successive petition. This standard is lower than the showing necessary to survive the second stage. *Robinson*, 2020 IL 123849, ¶ 43. In particular, *Brady* claims raise issues of fundamental fairness and due process, with the ultimate question being whether the allegedly withheld evidence undermines confidence in the verdict. See *Kyles*, 514 U.S. at 434. Irrespective of the ultimate merits of his claims, defendant has met this "low threshold" here. See *Robinson*,

2020 IL 123849, ¶ 60.

¶ 53 The State is free to make its arguments on remand. We express no opinion regarding whether defendant can survive a motion to dismiss or succeed at an evidentiary hearing.

¶ 54                                     D. *Chambers* Claim

¶ 55 Next, defendant argues that his prior attorneys rendered ineffective assistance by failing to argue that the trial court erred by preventing Cook from testifying that Smith told her he alone murdered the victim. The State argues that defendant's claim has been procedurally defaulted or, alternatively, that he failed to demonstrate prejudice.

¶ 56 Both parties argue extensively about whether the *Chambers* factors could be satisfied in this case. However, we conclude that a detailed discussion is not necessary or appropriate at this stage. See *Robinson*, 2020 IL 123849, ¶ 81 ("[Q]uestions regarding the admissibility and reliability of [*Chambers*] evidence are not relevant considerations at the motion for leave to file stage of a successive postconviction proceeding."). As defendant notes, and we have repeatedly emphasized, the question a court faces when deciding whether a defendant should be granted leave to file a successive postconviction petition is whether defendant has made a *prima facie* showing of cause and prejudice. *Bailey*, 2017 IL 121450, ¶ 24. Leave should be denied when the petition and supporting documentation are insufficient to justify further proceedings. *Smith*, 2014 IL 115946, ¶ 35. We conclude that defendant has made a showing that further proceedings are justified.

¶ 57 In concluding our analysis, we note (1) *Robinson*, which we have cited repeatedly because it supports defendant's position on appeal to this court, was decided earlier this year, and (2) the instruction *Robinson* contains regarding how a motion for leave to file a successive

postconviction petition should be handled by a trial court was not available in August 2017, when the trial court in this case denied defendant's motion for leave to file a successive postconviction petition.

¶ 58                                III. CONCLUSION

¶ 59          For the reasons stated, we reverse the trial court's judgment and remand the case for further proceedings.

¶ 60          Reversed and remanded.